UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SIDNEY SOUFFRANT,

        Plaintiff,

-against-

14-15 MERTENS PLACE CORP, et al.,

        Defendants.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/11/20
```

19-CV-5482 (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge**.

      The Court has received and reviewed the parties' joint letter-motion dated March 3, 2020 (Joint Ltr.) (Dkt. No. 30), seeking approval of their proposed Negotiated Settlement Agreement (Agreement) (Dkt. No. 30-1) pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). The Agreement requires defendants Grambro Realty Corp. and 14-16 Mertens Place Corp., together with non-party Joseph DeBenedictis (together, Defendants), to pay $32,000 to plaintiff Sidney Souffrant, in full settlement of plaintiff's claims, including wage claims brought pursuant to the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL). Ag. ¶¶ I-IV. Of this amount, $10,666.66 will be paid to plaintiff's counsel in attorney's fees and costs. Ag. ¶ I(C)(1). The settlement consideration will be paid in two lump sums, once plaintiff vacates his apartment at 14-16 Mertens Place, Mount Vernon, NY, which he will do within two weeks of this Court's approval of the parties' Agreement. *Id.*

      The Agreement includes mutual general releases. In ¶ IV(A):

> Plaintiff knowingly and voluntarily releases and forever discharges Defendants including any of its/their current and former employees, members, shareholders, board members, mortgagors, insurers, and counsel (collectively "Released Parties"), from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, damages, judgments, claims and demand whatsoever in law or in equity (hereinafter collectively referred to as "claims"), whether known or unknown which Plaintiff ever had or now has against the Released Parties, based on any acts, omissions, transactions or occurrences whatsoever from the date of the beginning of the world to the date of this Agreement . . .

And in ¶ IV(C):

> Defendants, on behalf of themselves as well as their predecessors and successors, hereby irrevocably and unconditionally release and forever discharge Plaintiff, his predecessors, successors, heirs, officers, agents, employees, directors, shareholders, assigns, administrators, affiliates, servants, legal representatives and attorneys, from any and all obligations, claims, demands, actions or causes of action, known or unknown, including those related to his former employment, regardless of whether such were raised in the Lawsuit, from the beginning of time to the date of their execution of this Agreement.

Ag. ¶¶ IV(A), IV(C).

The Agreement does not contain a confidentiality clause, nor a non-disparagement provision. There is a severability clause, which provides:

> ***Severability.*** Each provision of this Agreement is intended to be severable. In the event a portion of this Agreement is held to be legally invalid by a competent court of law, the court may interpret or modify such portion to be enforceable, or if not possible the invalid portion shall be stricken and all other obligations shall remain valid and mutually binding on the parties and not be affected thereby.

Ag. ¶ VI(D). The Agreement also provides that "time is of the essence." *Id.* ¶ VI(R).

The Court concludes that the economic terms of the Agreement, including the proposed award of fees and costs, are fair and reasonable as required by *Cheeks*, 796 F.3d at 206. Plaintiff worked for defendants as a superintendent until approximately May 31, 2019, when his employment was terminated. Am. Compl. (Dkt. No. 14) ¶ 4. Plaintiff represents that he "calculated his claim to be worth $40,000.00, plus liquidated damages of $40,000.00, plus an additional $10,000 for the Defendants' payroll mistake." Joint Ltr. at 2-3. However, there was a significant "factual dispute concerning the hours worked by Plaintiff," as well as "legal questions concerning FLSA coverage," *id.*, making a compromise settlement appropriate.

The proposed award for attorney's fees and costs is set at $10,666.66 (*i.e.*, one third of the total settlement amount), of which $442.65 will reimburse counsel's costs. Ag. ¶ I(C)(1); Joint Ltr. Ex. B. The remaining $10,224.01 equals 1.6 times plaintiff's counsel's asserted lodestar of $6,385,

Joint Ltr. Ex. B, which falls within the fee range frequently approved in this district. *See Montalvo v. Flywheel Sports, Inc.*, 2018 WL 7825362, at *6 (S.D.N.Y. July 27, 2018) ("Given that courts in this district will often approve lodestar multipliers between two and four times, counsel's requested fee appears reasonable."). Having evaluated the proposal under the factors set forth in *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 606-07 (2d Cir. 2020), and the cases cited therein – including "the most critical factor," which is the "degree of success obtained," *id.* (citations omitted) – I find that the proposed award, like the overall settlement payment, is fair and reasonable for purposes of *Cheeks*. 796 F.3d at 206.

The non-economic terms of the Agreement are also fair and reasonable under the *Cheeks* standard, with one exception: the releases. As this Court has previously held, "broad, general releases may be permissible in non-class FLSA cases if, among other things, the plaintiffs no longer work for the defendants and the releases are mutual." *Garcia v. Good for Life by 81, Inc.*, 2018 WL 3559171, at *3 (S.D.N.Y. July 12, 2018) (collecting cases). Here, as in *Garcia*, the releases are "mutual to the extent that both sides release and waive all of their claims against one another, whether or not asserted in this action, arising on or before the date the parties executed the Agreement." *Id*. at *4. However, they are "not mutual in terms of their breadth or extent," *id.*, in that plaintiff releases Defendants' "current and former employees, members, shareholders, board members, mortgagors, insurers, and counsel," and Defendants release plaintiff's "predecessors, successors, heirs, officers, agents, employees, directors, shareholders, assigns, administrators, affiliates, servants, legal representatives and attorneys." Ag. ¶¶ IV(A), (C). These releases are confusing, in that they appear to extend to persons and entities that could not exist.[1] They are

---

[1] Plaintiff is an individual, and therefore does not have any "predecessors," "successors," "officers," "directors," or "shareholders." Defendants are not (insofar as the record discloses) in the business of making mortgage loans, and therefore do not have any "mortgagors."

overbroad, in that they appear to extend to numerous persons and entities only tenuously connected to this action, and purport to release them not only from claims arising out of that connection but also from wholly unrelated claims. For example, if read literally, ¶ IV(A) could be used to bar personal injury claims arising out of an automobile accident between plaintiff and a motorist who happened to have once been employed by one of the Defendants. Thus, as in *Garcia*, I cannot approve the parties' releases as written. 2018 WL 3559171, at *5. *See also Lara v. Air Sea Land Shipping & Moving Inc.*, 2019 WL 6117588, at *2-3 (S.D.N.Y. Nov. 18, 2019) (rejecting release extending to the defendant's "parent company, affiliates, subsidiaries, divisions, related entities, predecessors, successors, and assigns and their current and former owners, principals, members, shareholders, partners, officers, directors, trustees, managers, employees, attorneys, insurers, and agents, in their individual, representative, and business capacities").

The Court presumes that the goal of the parties here was "more modest" than the language they used, and that their intention was that the releases would extend to those acting on behalf of or in privity with the parties, and as to such persons or entities would be limited to claims arising from actions taken "*in their capacities as such.*" *Lara*, 2019 WL 6117588, at *2-3 (emphasis in the original). On that understanding – and relying if necessary on ¶ VI(D) of the Agreement to conform the release clauses to that understanding[2] – the Court finds that the Agreement is fair and reasonable, as required by *Cheeks*.

---

[2] In *Fisher*, the Second Circuit cautioned that "[i]f a district court concludes pursuant to *Cheeks* that a proposed settlement is unreasonable in whole or in part, the court cannot simply rewrite the agreement." 948 F.3d at 605. *Fisher* did not address the question whether the district court may reform one of the Agreement's terms, such as the scope of the parties' releases, where – as here – the parties unambiguously granted the Court that power in a severability clause. *See* Ag. ¶ VI(D) ("In the event a portion of this Agreement is held to be legally invalid by a competent court of law, the court may interpret or modify such portion to be enforceable . . ."). I also note that any delay resulting from disapproval of the entire Agreement due to the overbroad releases would contravene the parties' clear intent that "time is of the essence with this Agreement." Ag. ¶ VI(R).

If any party objects to the Court's construction of ¶¶ IV(A) and IV(C), that party shall so inform the Court by letter no later than **March 18, 2020**. If no party files any such letter by March 18, 2020, the Court will dismiss this action and direct the Clerk of Court to close the case.

The Clerk of the Court is directed to leave the case open.

Dated: New York, New York  
      March 11, 2020

SO ORDERED.

_____  
**BARBARA MOSES**  
**United States Magistrate Judge**